Your Honor, the first case on the docket is 2-19-0254, the Russians and Wilkinson. Rachel Dross, Charles Barker, Jane Doe 3, Rachel Lees, Jane Doe 4, Megan Lind, Jane Doe 5, plaintiffs, athletes, the Institute of Basic Life Principles, Inc., et al., defendants, William Doecoe, defendant's cousin. Arguing on behalf of the defendant's cousin, Mr. David Sotomayor. Arguing on behalf of the plaintiffs' athletes, Mr. David R. Wardle. Thank you. Mr. Sotomayor, you may proceed. Good morning, Justices Hutchinson. Good morning, Clarence. Good morning, Mr. Jorgensen. On behalf of myself as well as my client, Mr. Bill Gottler, we thank you for the invitation to argue this morning before Your Honors with respect to the issue at hand. This is obviously a case involving an allegation of abuse of discretion by His Honor Judge Polkjoy in connection with our petition for fees pursuant to Supreme Court Rule 137. Initially, this is a hard, I guess you would say, difficult subject to address because it involves essentially a critique of a judge with respect to his decision and certain conduct in this case that I think I shared in my brief with respect to the inquiry of the allegations that were supported in the initial complaint. I looked up the term abuse of discretion. What is abuse of discretion? Abuse of discretion is a failure to take into proper consideration the facts and the law relating to a particular matter. But what are the facts and the law in this case? The facts, the evidence that was shared by way of testimony given by not only the plaintiffs, but by Mr. Mincelli of the law firm of Myers and Flowers relating to the investigation with respect to the veracity of the statement contained in the complaint is what we're talking about. Now, initially, when His Honor Judge Polkjoy began his ruling, I think he was correct. He stated that the law is basically, if it is clear that the signer knew or upon reasonable inquiry should have known that the material allegations, and I stress the word allegations in plural, of the fact the signer pled the false, the court abuses its discretion by not sanctioning the signer under Rule 137. That was a correct assessment of exactly what the law says. Counsel, there's one point in time that it's argued that in addition to what might be considered reasonable, and he said he spoke with each one of them, he reviewed the medical records, or he reviewed what they had provided. You wanted him, or you argued that he should go beyond that and get new medical records, new medical examinations for these people? Your Honor, I don't recollect any testimony that he reviewed, he, Mr. Mincelli, reviewed any medical records. As a matter of fact, the contrary, when I asked whether he had sent any of his clients to any type of medical person, third party, and I refer in my brief to page 12, and I also apologize when the printing occurred, they misplaced 10 in front of 17. Okay, I ask, so is that the only thing you have done in connection with conducting an investigation to determine whether or not she has a repressed memory? Me, personally, yes. I then ask the question, if we go further down, did you ever consult or send a client to a medical professional, or psychologist, or psychiatrist, to determine whether or not she was truly suffering the clinical diagnosis of repressed memory? There was an objection, which was then overruled, and Mr. Mincelli testified they did not send anyone to a third party medical professional. And where do you have authority that he had to do that? You asked the question, so in asking the question, you must have had some reason. What was the reason and what was the authority? Well, the reason was there had initially been, in the underlying case, a motion to produce medical records. And there was a motion to compel the plaintiffs to produce those records, and when they weren't voluntarily produced, his Honor signed a order compelling that information to be provided. Rather than do that, what do the plaintiffs do? They voluntarily dismiss the case. I thought that's when they didn't provide the social media aspect of this case. There was another component. There was a chat site entitled R2D2, which some of the plaintiffs testified to its existence, and it was a site to share their stories with respect to these allegations. And it was within those, there was two, there was an R2D2 and then there was another site, the name of it slips into me right now, but it was out there for all the plaintiffs to share, being monitored by the plaintiff's attorneys. So they were aware of the statements from some of these plaintiffs who said, repressed memory? I never said to anybody I had repressed memory. And so what I'm saying is that I'm not trying to say that it is a requisite that you have to do that, but consider the reasonableness. You have 17 people coming in, and supposedly, if you look to the initial complaint, all of them say, I have repressed memory. But then, in my cross-examination of Mr. Mincelli, which I believe his position is, it is my job once the complaint is filed, I go in, I go on to ask him, well, tell me how is it that this idea or this statement of repressed memory comes about? According to his testimony, that he formed the conclusion, and I emphasize conclusion, that the plaintiffs all had repressed memory, pled that way, and never presented a drafted plea to the respective plaintiffs to verify. And there was some mention within the Judge Oakjoy's ruling that, well, nothing was verified. Well, it doesn't have to be verified, because under Supreme Court Rule 137, the signature of the attorney certifies that the statements contained within the complaint are, in fact, true. So that's to his knowledge, upon reasonable inquiry. Well, I guess that's the issue. What's reasonable inquiry? What constitutes reasonable inquiry? If you have before you information that some of your clients have said, I never said that. And how did you get that information? Through the testimony and through the discovery of the initial Internet site chats, which were transcribed, the plaintiffs' counsel had, you know, essentially hundreds of pages of these documents, knew that those statements had been made. As a matter of fact, those statements had been contained in certain motions, which the prior attorney representing Mr. Gotthard had in his possession. So to say, well, we didn't know anything, isn't true. They had knowledge of that or could have easily determined that way before three years down the road. But then, if you go to the statement of Mr. Mincelli, did any of these people – I think what the question was, Mr. Mincelli says this in his testimony, that the law firm of Myers and Flowers had developed information about the lifestyle and culture of the people in IDLP. And then, that is how they then formed this conclusion. They didn't say that all these people said that they had repressed memory. They alleged it, which constitutes, in my opinion, that they have investigated this and that people have said this. How can that be true if, in fact, these other individuals are saying, I never had repressed memory? I don't know what you're talking about. It seems like you're arguing two things. You're arguing, number one, that there's inconsistent statements being made, one by the attorney who says that it's repressed memory, and two, the clients say they're not. And then you're also adding, as an issue, whether or not the attorney, regardless of whether or not there was this inconsistency, should have reasonably inquired as to whether or not there was some sort of medical data that would support a reasonable person's determination that repressed memories existed. Am I correct in attempting to encapsulate or at least present to you what I think I've heard so far? Judge, I would present it this way. And in his honor, Judge Polkjoy's statement in his ruling, repressed memory is not a cause of action. I agree. It's not, per se, a medical condition. I agree. It is a symptom. It's a what? A symptom. A symptom. And I agree with that, but because of the time period which the plaintiff's causes of action were alleged to have occurred, the existence of repressed memory was a condition preceded to, in order for the lawsuit to have been properly filed. Because all the causes of action here relate to a time period that is outside the normal statute of limitations. The only exception to that is where you have repressed memory. How convenient, okay? And then how convenient is it that all these people all come in and allege to have this same symptom? A symptom that is necessary in order for the case to be filed because clearly everybody acknowledges that the causes of action, whatever they may be, are beyond the normal statute of limitations. So now you have, so that in and of itself, I mean, I was born at night, but not last night. That kind of raises the antenna up there. Well, wait a minute. How do you guys all have this same condition? And then we find out that when Mr. Flowers initially gets involved in a case and they file the third amendment complaint, he acknowledges on the record, no, these allegations are crazy. Okay. Maybe the second antenna goes up and says, well, why does he say they're crazy? Because I think just as a common person, and I'm talking about a first-year graduate, or not first-year, coming out of law school and you have this case in front of you, what do you do? I mean, maybe you can have an excuse why I'm a novice. But here we have an experienced attorney amongst the top 100 trial attorneys in the country. That's what they purport to be. Well, I think that when you have, whether it be a doctor or a lawyer, in this case, obviously we're talking about lawyers, that that triggers something of duty. And that's what the police law says. What constitutes reasonableness? If you have information that this person does not have repressed memory, I'm not saying that you have to first go get a doctor's report in a malpractice case. Yeah, that's a requirement, right? We have to, medical malpractice, you have to have the opinion of a doctor before you have standing to file the lawsuit, if I'm correct. Well, here, I'm not saying that you have to do that, but once you find out that these people have made statements, at least three of the plaintiffs, that I never said this, I never said repressed memory, have discussions with the attorney about this, and then the attorney's own admission with respect to what they did or what they didn't do when they had that information. Are you saying they have to use the words repressed memory? Or do you, or can they say, you know, I remembered this after a period of time? You want them to use the clinical term, correct? No, no. Well, then what's the issue here? Well, because they make an allegation, when I say they, the authors of the complaint, in this case, the lawyers, make the allegation. How does that come up? Well, I ask them at the hearing, how did you come up with this? They use that terminology. They form the conclusion. They specifically don't present it to their client to ratify it for its veracity. Because why? You know, it's obvious. Because that's what they need to get over the hump. So in a conscious disregard for searching for the truth, I mean, all these years that I practiced law, this is my church. This is my church. You, I believe, said that veracity was the touchstone, the benchmark, et cetera. And the main issue with repressed memory is similar to testimony or the recollection of children. And that is, is that the memory may be false, but the relation of that memory may not be a lie. It may not be false as far as the relator is concerned. Insofar as the relator is concerned, that's what they remember. And that was probably the major concern as to why repressed memory is shadowed or held in some disrepute, which is the witness may believe that this happened, but that doesn't necessarily mean it did. And so when you start talking about veracity, whose veracity are you talking about? The people who claim that they had repressed memory? And, by the way, were there any people who actually indicated that they had repressed memory? Or it seems like you're implying that every single complainant or plaintiff didn't have or didn't use the term repressed memory. Judge, first of all, with respect to repressed memory, do I believe that it truly exists? Yes. I'm not saying that all the plaintiffs, that none of them was suffering from repressed memory. I'm not saying that. Because if you look at the history of this case, by the end of these so many years, out of the 17, there were only seven left. And out of those seven that were left, at least three of those seven had indicated at some point that they did not have repressed memory. And the problem here is one of the bases upon which His Honor Judge Polktoy denied my motion, and you can see the exchange that he and I had, he was under the belief that I had approved a negative, that these people did not have repressed, that they weren't suffering from repressed memory. The whole issue in this case is not whether they had, well, it's the information that was given that at least three of these plaintiffs indicated I did have repressed memory, I don't have the memory issue, and therefore that information was known a long time before this. I don't know about the ones that were dismissed earlier, but when you continue the litigation and you're asserting that there is repressed memory with respect to these plaintiffs, and then they come in and they testify that they don't have repressed memory, never did to the day that they were testifying, and His Honor Judge Polktoy had indicated, well, I believe their testimony. Well, okay, if you do then they were credible, then the testimony about these three, at least these three plaintiffs that never had repressed memory is credible, and then the attorneys try and use the attorney-client privilege to avoid me getting into what they actually knew, which when somebody, first of all, I found it to be a conflict of interest to initially represent the plaintiffs and then essentially representing the law firm because, you know, they're trying to shield the inquiry as to this repressed memory by attorney-client privilege when they open the door to the disclosure of that information, when in fact they bring these allegations in a public forum with respect to the complaint. And my point about veracity relates to whose veracity are you referring to? Are you referring to the lawyer's veracity or to the plaintiff's veracity? Unfortunately, Your Honor, the lawyer's veracity. The lawyer's veracity. That is what is very disappointing in this case. And who, which lawyers in particular or lawyer in particular? Well, the entire firm, and I know in the federal rules, I think it's Rule 11, it's changed it so that everybody, not just the signer. In this case, the signer was, I believe, Mr. Flowers. And then you saw the exchange and the testimony of Ms. Sully. Well, I didn't react to the complaint. I came in afterwards. It's sort of like, it's not my job. It is our job. It's our job as an attorney throughout the entire pendency of the case. And when you have information and you can't just stick your head in the sand like an ostrich and say, I don't know, it's your duty to investigate. And that's what the court said. I apologize. Am I out of time? Your time's up. You'll have an opportunity to make rebuttals, sir. Thank you, Your Honor. Mr. Lordwell, you may proceed. May it please the Court. Mr. Gothard, the party seeking sanctions under Rule 137, has the burden of proof to show whether the plaintiffs made untrue and false allegations in a pleading without reasonable cause. Using an objective standard, the trial court determines whether or not there was a reasonable basis to make the allegations at the time the pleading was filed. Even if the trial court finds that there was not an objectively reasonable basis for the factual allegations, sanctions are not required under Rule 137, and the trial court has discretion to decide whether or not to grant them. This Court has noted that sanctions are reserved for only the most egregious cases. All right. Well, if what Mr. Sotomayor has said, that three of the plaintiffs now say, I never said I had repressed memory, wouldn't that be egregious? No. And in part, to frame this properly, the pleading's at issue is the 30-minute complaint. The 30-minute complaint alleged that Mr. Gothard groomed young women and girls over a period of decades in order to abuse them, and that, in fact, he did sexually abuse or sexually harass 17 individuals who were named in the third-party complaint, which includes all of my clients. Mr. Gothard and his counsel are not standing here before this Court saying that the plaintiffs lacked a reasonably objective basis to make these claims, to allege that they were sexually harassed, to allege that they were sexually abused. Right. But let's cut to the chase here. If it happened that long ago, you're out on a statute of limitations immediately. The repressed memory is what gets you past there. That's the heart of the complaint here. Yeah. But, I mean, it's the bigger picture, that the causes of actions are not in dispute. But let's get to the – let's get to that. Absolutely, Your Honor. The allegation in the third-party complaint said that the – each of the plaintiffs did not appreciate that the act was abusive and that each plaintiff was suffering from a condition that caused her to repress the memories of abuse and or did not know her injuries were caused by the abuse. So when he's talking in the context of repressed memories, that's not – it's sort of taking it slightly out of context because the complaint does not – the third-party complaint did not allege necessarily that each of the – You alleged it in the alternative. In the alternative. So when there were plaintiffs who testified, in fact, they did have repressed memories. In the brief – in the briefing before, Your Honor, Mr. Sotomayor and Mr. Goffert only identified and only talked about the testimony of two of the plaintiffs. One was Jane Doe DeVette. And what she testified was that she did repress her memories. And she explained that she repressed them until 2015 and that she had been seeing a therapist. And the interrogatory answers had disclosed that she had been diagnosed with post-traumatic stress disorder. So for that plaintiff and for other ones, they did testify they had repressed memories. Now, Charis Barker is the other plaintiff who was talked about in the briefing and who he's talking about today before the court. And what she said is that when – in the correspondence or the discussions in the message boards she's talking about is that she said when she first heard that they were alleging repressed memories, she didn't – I didn't repress any memories. But she also testified that she was confused by what that meant. She reached out to the attorneys to find out what it meant. They explained to her what this meant. And after having explained to her, she was satisfied that the allegations of the complaint, the 30-minute complaint, again, that suffered from a condition that caused her to repress her memories and or did not know her injuries were caused by the abuse. But was it the and or the or? In her case, it was the or. Because if you read her testimony carefully, you'll see how she talks about when she's being asked questions about a repressed memory. She says, well, but that's not all of it. That's not all of it. Because what she was talking about, she did not appreciate the abuse. Did these plaintiffs – I mean, for the most part, did each of them have been seeing or had been diagnosed by a counselor or a psychiatrist or anything of that nature? A fair amount had. I can't tell you the number off the top of my head, and I apologize for that. But yes, in the responses to the seven motions for sanctions, all of the interrogatory answers were disclosed, showing who did – people who had been seeing therapists, a lot of people had been seeing therapists. Some had been formally diagnosed. Some had not. But the important thing here is that it's not just an issue of repressed memories. You can't cherry pick like they're doing. Oh, well, this plaintiff didn't say she had repressed memories. That's not the test. The test for Judge Popejoy was to look at the time that the third amendment complaint was filed, which was August 17th of 2016. Was there an objectively reasonable basis for the allegations? And he said there was. And he made that determination after hearing a full day of testimony in which he heard and not only got to hear, but he got to see. And he witnessed each of the plaintiffs except for one, Rachel Weaves, who was excused because she lived in New Zealand. And she had been – there's a discussion of that in the record. She had been given an opportunity – Mr. Goppett had been given an opportunity to take an evidence deposition, and didn't do it. But he heard from everyone else. He also reviewed the written responses, which included interrogatory answers, which did lay out medical treatment that various plaintiffs had for these plaintiffs. And he also heard the testimony of the attorney, Mr. Minciello, who testified that he did not – well, he testified to this. He said that, yes, he believed his clients, and they told him the same, so he believed them. And second of all, he testified – Is that enough? Yes. I was abducted by aliens. Is that enough? But I believe it. Okay. I mean, I believe it happened, and I convinced my attorney that I believe it happened. Is that enough? And what's the difference between that and what happened here? Well, let me back up a little bit. It can be enough. It depends on – it depends on all the circumstances of the case. But it can be enough for an attorney to be told their client tells them something. If you say you were abducted by aliens, I mean – I'm trying to make the point. Respectfully, that's not a reasonable – Right, and it's probably not a cause of action. But the point is, what – how much can you take for granted when it's – you're not a doctor, you're not a psychologist, you're the plaintiff's attorney, whoever that might be. How much further do you have to go to claim that it's a reasonable investigation? And, you know, that really does depend on the circumstances of the case. And it depends in part – you can rely upon just upon what your client tells you. If it's a reasonable – if it's a reasonable statement. And in this case, Judge – What makes it reasonable here? Well, Judge Popejoy found that it was. He found, with respect to the plaintiff's – and let's be clear, this motion for sanctions only sought sanctions against the plaintiffs. Yeah, I noticed that. The motion for sanctions didn't seek sanctions against the attorneys. It only sought sanctions against the plaintiffs. So the only issue that Judge Popejoy was ruling on in the issue before this court was whether it was objectively reasonable for each of the plaintiffs to allege in August 17th of 2016 that she had repressed her memories and or she did not appreciate the relationship between the abuse and her injuries. So you're saying this is forfeited on the basis that the appeal is attempting to obtain relief from someone who wasn't the object of scrutiny below? Absolutely. The relief that was sought was only against the plaintiffs. It was not against the attorneys. So they're now shifting it. The argument before the court really didn't address whether it was reasonably objective for the plaintiffs to make these allegations. And Judge Popejoy found they did. And he did by watching them, listening to them, hearing them, hearing what they had to say, and judging the credibility. And he talked about this in a pretty detailed discussion where he was also talking about repressed memories and how it's a really fluid concept. There's no formal legal definition of what it is. It's a fluid concept. And he was clear that these women who testified before him, he found all to be credible, and he found that they were struggling with their memories. And that's not inconsistent with the allegations that you repressed your memories or that you did not appreciate the relationship that the abuse caused injuries. But the attorney did more than just rely upon his clients. Although, respectfully, when we have a ruling from Judge Popejoy saying it was objectively reasonable for the plaintiffs to allege that, respectfully, that is, the attorney could rely just upon that. If it's objectively reasonable what your client is telling you, you can rely upon that without doing any further investigation. And I believe I cited cases to that principle. Did Mr. Mincielli indicate he asked for more information or the documentation from them? And is there anything that says he actually got that documentation from them? There is nothing in the record before this court talking about additional information he requested with respect to specific plaintiffs. But what there is in the record is where he explains what other investigation they did, which was to investigate the defendants in his organization itself and to see what it is. Because it was an organization where authority sort of drove everything and that Mr. Gothard could do no wrong. So that the normal support system for these plaintiffs, which would be their friends, which would be their family, that they would all say, oh, Mr. Gothard could not have done anything wrong. If he did something to you, there was nothing wrong about that because he can do no wrong. So it was an entire culture. And the complaint does talk about that. And let me just briefly switch for a second. When counsel was talking about how Mr. Flowers made a statement about how the allegations in the complaint were insane, he was referring to the Second Amendment complaint because there's allegations in the Second Amendment complaint that don't directly relate to any causes of actions. There's allegations in the Second Amendment complaint by theological experts criticizing Mr. Gothard's theology. That is not in the Third Amendment complaint, but that's what he's referring to. He was not saying that the allegations of repressed memories were insane or anything like that. And that statement was made before the Third Amendment complaint was filed. So in this situation where the attorney, who's not the subject of the motion for sanctions, where he is presented with statements from his clients from medical records that show that some of them had received therapy, had had a diagnosis, when he is told those things and the judge finds that it's objectively reasonable statements, the attorney can rely on that, but he didn't. You indicated that the judge made findings relative to the veracity of the plaintiffs. Yes. Did he make any findings relative to the veracity of the attorneys? He did not make any explicit findings, but that's not surprising because that wasn't what the issue was before him. The issue was whether the plaintiffs had a reasonably objective statement. But he certainly said nothing in his findings which would lead one to believe that he did not believe the attorney. But that wasn't the issue that was before him. Well, I didn't ask him that. My point is that sometimes people volunteer information. He did not. He was called an aside or additionally or furthermore or nevertheless, so on and so forth. There was not an explicit statement, oh, by the way, I also found the attorney credible. At the same time, there's nothing in any comments or anything that suggests that he found anything to be unbelievable. Everything indicates that his veracity, that he was believable as well. And let's be clear here. In this motion for sanctions, Mr. Godler had the burden of proof on this. And while the only witnesses who he called were the plaintiffs and Mr. Mincielli, he did not present any expert testimony showing, oh, these plaintiffs absolutely did not repress the news or couldn't do it. He didn't present anything else. The judge took the evidence that was presented to him. He evaluated that evidence. He determined the credibility of the witnesses, including the attorney, even though he didn't explicitly make a ruling with respect to him, and found that it was objectively reasonable to make these allegations. Is there any issue that maybe some of the plaintiffs or one of the plaintiffs sought treatment after the complaint was filed that came into question? There were some of the plaintiffs. I believe the answer is no with respect to the third amendment complaint. I was saying I believe there's some testimony that some of the plaintiffs started seeking therapy after the original complaint was filed. So I thought the lawsuit was solved, but not the third party complaint that was at issue. I don't believe that. But I'm not – that you started seeing treatment afterwards doesn't mean that you didn't – that someone started seeking treatment in 2017 didn't mean they had – they didn't have these issues or these concerns in 2016. In fact, they had them when they started getting treatment. But I'm not sure, including the third amendment complaint. Now, on the timeline that is before us, this case has been dismissed, voluntarily dismissed. Did it come as a result of the failure to produce all of the medical records or the problem with the social media records? Well, I mean, it was a decision made by the plaintiffs to voluntarily dismiss their case. The timing of it, however, is that in 2017, so a year after the third amendment complaint that's at issue had been filed, in the fall of 2017, there were additional documents that were produced, including social media documents. And then, I believe it was in December of that year, the judge ordered – there was a dispute over is that all of the records or not. And the representations with that from the plaintiffs' side said it was all of the records, except for a journal. It was like an 80,000-word journal. And so it was continued for stats, just for stats, in February of 2018, for stats on these affidavits. And that's when the case was voluntarily dismissed. So, I mean, the timing, certainly, is these documents come out and the case is voluntarily dismissed. There is that timing, but there's no representation in the record that it was because of. I have some questions about the attorney-client privilege. Why shouldn't a defendant be able to pierce or go behind an attorney-client privilege when this is the heart of the issue, is what was disclosed between attorney and client? That wasn't the heart of the issue. The heart of the issue was, was it reasonably objective? Right, but how do you know that? How do you evaluate that if you don't know what was predicated? What you do know is what the plaintiffs believed at the time. You do know the information that the plaintiffs had in their mind. It's important, not only what I believe, but what I told my attorney. Because the attorney, you told me a couple of serious questions before. It's what the client says, is that reasonably objective or objectively reasonable? But if you can't tell me what it was they said, how do we ever judge that fairly to both sides? I know that's a loaded question. Attorney-client is one of the oldest, most protected privileges, period. But what about it? It's an interesting question because it's an unbelievably dangerous slippery slope. I don't disagree with that, but you're the one that's answering the questions. I know that it's a slippery slope, but I also see the other side in that if we're going to judge whether you, the attorney, made these with a reasonable basis or not, how do I know that? How do I evaluate that if I don't know what your client told you? Because you know the information that did exist. The information that would exist is the client. I don't know that. I don't know what else your client told you. But the fact that an allegation is made in a complaint, any allegation that made a complaint, does not open up the attorney-client privilege. And that's the flip side of your position, and it has to be. It's no different than if I'm drafting, a client comes to me and slipped and fell on some ice. I draft a complaint saying the plaintiff slipped and fell on ice. Well, what's the basis of that? The basis is the client says, I slipped and fell on ice. You can't continue on and say, okay, attorney, but why did you say that? It's because the plaintiff said that. It's the same thing here. The plaintiff testified before Judge Boakjoy. Agree. What else did the client tell you? That's what may or may not color whether or not your allegation was objectively reasonable. But there's nothing – and again, you know, I mean, it's the society that's – Is it a balancing test that attorney-client privilege is more important than pursuing – Yes. That's not to say it's not a balancing test in an individual case. No. I think it's a balancing test in society. Oh, absolutely. I mean, there's so many instances where information made by an attorney to a client, a client to an attorney, could be helpful for various reasons, but it's protected. We look at the Decker case, which is the case that he cited in his brief for the crime fraud exception, where the question there was if the attorney knew the location of his client. The client told him the location of where he was who had abducted a child. And the court said, no, it's protected. So there was a balancing test, and the balancing test weighs heavily in favor of the attorney-client privilege. Here, he was allowed to explore what the plaintiffs knew and what they believed at the time that the Third Amendment was filed. He was also allowed to explore what additional investigative steps that the attorney did, and Judge Prochoy decided based upon all of that that it was all reasonably objective and there was no basis for sanctions. Is it possible that if this case had gone to trial and ordered proof that there was discovery which preempted the statute of limitations from precluding liability, that the burden of proof would have been on the plaintiffs to establish the alleged discovery? And then if there had been a trial and there was found to be a viable defense that it was repressed memory, but what would have happened if the trial court had said, based upon what the presentation of the plaintiffs made, I don't believe that they've established that there was discovery. Okay. Now once that finding is made, what happens insofar as the 137 motion? Is it still his burden to come forward or going forward? Or has the trial court made ancillary findings, in fact, which would alleviate the burden, if not completely, at least to a great extent? It's interesting. I agree with you that if this case had gone to trial and if the affirmative defense of the statute of limitations was raised, it would have been the burden of the proof on the plaintiff to show the exception, which would be the repressed memories in this. So if the finder of fact, or to answer your hypothetical, the judge himself, found that it was not credible, then if sanctions was brought, it's still the burden of proof on Mr. Gothard to show that there was no basis at the time of whatever pleading was at issue. In other words, it's not just a failure of proof. It's an unreasonable presentation of the alleged truth. This Court has made clear that the fact that a party loses an argument or the facts were ultimately proved in a different way is not a basis for sanctions. And that's really what you're saying. The fact that the plaintiff could not at trial necessarily prove that there were repressed memories, that alone, that's no basis for sanctions. If it is, then we essentially do away with the American Rule. Back to the attorney-client. That means the attorney cannot disclose the content, but the client always can. Yes. So each of these individual plaintiffs, when they were called to testify, could have been asked, what did you tell your attorney? And if they wanted to, they could have waived the attorney-client privilege and answered that. Absolutely. Okay. Absolutely. But again, they didn't. They didn't have to. They shouldn't be put in that position. It is the burden of proof of Mr. Goffin to show that there was no reasonable basis for these allegations. Judge Polkjoy found that was objectively reasonable. Even if there was unreasonable, it still doesn't mean they're entitled to sanctions. Rule 137 is discretionary and uses the term may. And sanctions were not appropriate in this case. If you have any other questions, I'm happy to answer them. Otherwise. No. Your time has expired. Okay. Thank you very much. Mr. Sotomayor, you may proceed. Yes, Your Honor. Let me first begin by addressing some of the questions Justice Jorgensen raised with respect to the attorney-client privilege because I see that as very critical when His Honor, Judge Polkjoy, denied my ability to inquire and that Attorney Mincelli raises the attorney-client privilege. It was a conflict of interest for Mr. Mincelli to both be representing the plaintiffs and the law firm. Before I entered into that courtroom, before those questions were posed to Mincelli with respect to what he did or didn't do, I didn't know the answers to that. It was my once-in-a-lifetime Perry Mason moment because some of the comments that he made with respect to his inaction in this case are astounding. And it's the – because he's now on the hook, you see, because even though – and counsels try to say, well, you know, they must, so we're off the hook. Uh-uh. If you look at Rule 137, it specifically says, if a pleading motion or other document is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, blah, blah, blah, blah. Polkjoy made no overtures that that's what he was doing. Correct? Well, in terms of him taking the initiative, no. So then that leaves the alternative. Not necessarily, because as a judge, I believe, just as an attorney, you have certain duties and obligations. If you are presented with information that a pleading was – that there was a violation of a Supreme Court rule, what obligation does the judge have? Can he simply turn around and say, no, I'm not going to do anything about it? Did he say that the actions of Mincelli were in conformity with the rules – with Supreme Court Rule 137 or the code of professional responsibility? I point to the testimony when I asked him about being required to abide by the rules of professional responsibility. His answer was, I don't know if it's my role as an attorney, once I become involved in a file, to go back and review everything that has been done with respect to view towards the rules of professional responsibility. I don't know that. Am I to understand that your claim on appeal is that you should have obtained a judgment against the attorney or attorneys on the basis that the trial court erred in failing to, on its own initiative, assess fees? What I'm saying is that I should have been given the opportunity to find – to ask those questions which Attorney Mincelli objected to as attorney-client privilege. Once again, who is the client? The client should be the plaintiff, the named plaintiff, but also he's representing the law firm at that point. So he is using the right – the right privilege of the law firm. How is he representing the law firm? If you didn't seek fees against the law firm and the only way that the law firm would be put on notice is if after a hearing or during the hearing that the trial court said, you know, the rule says on my own initiative. So on my own initiative, I'm going to seek your counsel or if you don't want to do it, I'll ask questions sua sponte to establish whether or not I should initiate assessment fees against the lawyers. I think it's incumbent upon the – well, first of all, I believe the court has the inherent authority to do that, but I'm not saying that that in and of itself – Well, the inherent authority vis-a-vis the inherent duty of – I think that a court, every court, including this court, has a duty to prevent fraudulent – I'm using the word fraudulent and – Abuses of power? That would – that would be – Who signed the third amendment complaint? The principal of Myers and Flowers, which is Mr. Flowers. Then why are all the questions essentially that I saw in the record addressed to Mr. Mincielli about did you do this, did you do that, why didn't you do this, why didn't you do that? Why don't you ask about what Mr. Flowers did? Well, just because Mr. Flowers signed the initial third complaint, there were subsequent pleadings which all were dependent upon the veracity of that first complaint. The third amendment complaint? The third amendment complaint. So Mr. Mincielli was the individual in charge of prosecuting this on behalf of the law firm. So under Rule 137 and the federal Rule 11, any party with respect to the law firm, whether it be – you know, otherwise you get a guy fresh out of law school, right? What does he have to worry about if the liability only attaches to him? Okay? Because then we don't have nothing to worry about. But here it seems to be the argument from the firm that – I wrote it down here because it's interesting. At the time it was filed. Oh, well, let's just look at the time it was filed. That's not what the case law says. There's this continuing duty. And when you have the information, you've got to do something about it. It isn't just about at the time the third part of the complaint was filed. The reasonableness of the firm investigation – and it's interesting. He said we investigated the defendant. No. The investigation is centered on the veracity of the statements that your clients have made. And when you have that information that indicates that the veracity comes into question, once again, you can't just say, not my job. You have to investigate. So the focus isn't like counsel wants you to simply believe it's at the time of the filing. And the case law supports that it's throughout the entire pendency of the case. Okay, I have a question. Why didn't you call Mr. Flowers? Well, to be honest, I came in at this case. I believe I was given leave to come in on December 11th. The answer can be I didn't have a chance. But you didn't call him. I didn't suspect that he is not being a participant in the case as it went on. I think he was simply the lawyer who stepped up at one point. But this person in charge of this case was Mr. Minselli as he testified. He even had people working. So he was the – Because you didn't think he was important enough, Mr. Flowers. Okay. You also said you thought that this was a conflict of interest for Mr. Minselli to be representing the plaintiffs in that Yekohin. Yes. Did you ever make a motion to disqualify him? I indicated on the record to judge – That would be a yes or a no. I filed it. I didn't file it. Did I make the motion orally? No. Okay. Well, I orally indicated to the judge that I believe, and I say Judge Polkjoy, that there – that I believe there was conflict. And I had indicated that before. Yeah, but you never filed a motion. You never asked for a ruling. No, I did, Judge. Okay. Okay. That's all. Okay. Thank you. Your time is up. There are other cases on the call. We will take the case under advisement. There will be a short recess. Thank you.